IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Case No. 10-cv-01297-REB-KLM

ED HARSHBARGER, JR.,
RONALD HERBER,
VIRGIL JONES, and
THE DENVER TYPOGRAPHICAL UNION NO. 49, COMMUNICATIONS WORKERS
OF AMERICA LOCAL NO. 14705,

     Plaintiffs,

v.

LESTER E. STEVENS, JR.,
THE DENVER NEWSPAPER GUILD-CWA, LOCAL NO. 37074 OF THE
COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO-CLC, and
THE DENVER NEWSPAPER AGENCY, LLP, a Delaware limited liability partnership,

     Defendants.

---

## ORDER GRANTING MOTIONS TO DISMISS

---

Blackburn, J.

     The matters before me are (1) **Defendant Lester E. Stevens, Jr.'s Motion To Dismiss Amended Complaint** [#39][1] filed November 3, 2010; (2) **Defendant Denver Newspaper Guild – Communications Workers of America, Local No. 37074 Motion To Drop as a Party and/or Be Dismissed** [#38] filed November 3, 2010; and (3) **Defendant Denver Newspaper Agency's Motion Under Fed.R.Civ.P. 21 To Drop Denver Newspaper Agency as a Misjoined Party, Alternatively To Dismiss Under Fed.R.Civ.P. 12(b)** [#37] filed October 29, 2010.  Finding that the court lacks subject

---

[1] "[#39]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

matter jurisdiction over these claims, I grant Stevens's motion on that basis and deny the other two motions as moot.

## I. JURISDICTION

I putatively have jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

## II. STANDARD OF REVIEW

Although the various motions implicate also issues under Fed.R.Civ.P. 12(b)(6) and 21, a district court always must assure itself of its own jurisdiction. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.), *cert. denied*, 116 S.Ct. 174 (1995). Therefore, I address defendant Stevens's arguments challenging plaintiffs' claims on ripeness grounds first. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498-99 (10th Cir. 1995) (ripeness implicates court's subject matter jurisdiction); *Sierra Club v. Young Life Campaign, Inc.*, 176 F.Supp.2d 1070, 1083 (D. Colo. 2001) (same).

A motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) may consist of either a facial or a factual attack on the complaint. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). A facial attack, such as is mounted here, challenges the sufficiency of the complaint's allegations of subject matter jurisdiction. *Id.* In reviewing such a motion, the court must accept the allegations of the complaint as true. *Id.* Plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 512 (10th Cir. 1994); *Fritz v. Colorado*, 223 F.Supp.2d 1197, 1199 (D. Colo. 2002). "'[The] motion must be determined from the allegations of fact in the complaint, without regard to mere

2

conclusory allegations of jurisdiction.'" *Fritz*, 223 F.Supp.2d at 1199 (quoting

*Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971)).

### III.  ANALYSIS

This is a case seeking declaratory and injunctive relief in connection with a

collective bargaining agreement ("CBA") and certain associated memoranda of

agreement ("MOA").  Plaintiffs are the Denver Typographical Union No. 49 ("Local 49")

and three of its executive officers.  Defendants are the former president of Local 49,

Lester E. Stevens, Jr. ("Stevens"), the Denver Newspaper Guild-CWA, Local No. 37074

(the "Guild"), and the Denver Post (the "Post").

Historically, both Local 49 and the Guild have represented employees and

retirees of the *Rocky Mountain News* and the *Denver Post*.[2]  Local 49 represented

printers, non-management employees of the Prepress Shared Work Department, and

certain non-management employees of the Information Technology Department.  Some

of the printers whom Local 49 represented are named on attrition lists that entitle them

to job security and other employment benefits.

On March 5, 2008, Local 49 signed a new CBA with the Post.  That agreement

contained two provisions pertinent to this case.  First, Local 49 no longer represented

the printers and prepress employees who previously had been its members.[3]

Nevertheless, the agreement provided further that the active employees on the attrition

lists were subject to the separate CBA between the Guild and the Post and that Local

49 still was entitled to enforce the rights secured by the attrition lists.  Second, although

---

[2]  By virtue of a 2001 joint operating agreement between the Guild and the Post, all such employees now are considered employees or retirees of the Post.

[3]  Although not entirely clear from the Amended Complaint, it seems that these employees became members of and were represented by the Guild thereafter.

Local 49's pension plan would continue to be managed in the manner it had been previously, Local 49 and the Post agreed to consider alternative management options, subject to their express mutual consent, including one which would allow the plan to be administered solely by two members selected by the Post.  Plaintiffs allege irregularities in the ratification vote on the CBA and submit that, had the proper procedures been followed, a majority of the membership of Local 49 would have voted to reject it.

The following month, the Guild and the Post entered into Memorandum of Agreement No. 6 ("MOA 6"), which created a new Pre-Publishing Department consisting of employees who previously had worked in the prepress department.  In addition, the Guild and the Post agreed to incorporate the attrition list provisions into their own CBA. Plaintiffs allege that MOA 6 was never submitted for ratification to the membership of Local 49 (although three non-officer members of the union signed it) and that they only recently learned of its existence and contents.

The CBA between Local 49 and the Post expired on October 10, 2009.  Although plaintiffs allege that a new proposed CBA was discussed at a regular membership meeting less than one week prior to that date, the Amended Complaint does not reveal whether a new CBA was adopted, or, if one was, the terms of any such agreement. Instead, plaintiffs claim that, in connection with the ratification of a new CBA as between the Guild and the Post in November, 2009, Stevens and representatives of both the Guild and the Post entered into another Memorandum of Agreement ("MOA 12") providing that

> (1) the non-management employees of the Post's IT department would now be represented by the Guild, rather than Local 49;
>
> (2) the pension plan would be amended such that the

governing committee was composed solely of
representatives of the Post, eliminating the union members
of that committee;

(3) IT employees who participated in the pension plan would
accrue a pension credit; and

(4) wages and benefits of employees represented by the
Guild, including the newly added IT employees, would be
reduced.

Plaintiffs assert that MOA 12 was not presented to the members of Local 49 for

ratification.

As a result of these actions, plaintiffs claims that Local 49 "no longer has any

members who are employed by Defendant Post or any other employer." (**Am. Compl.**

¶ 40 at 9.)  They seek declaratory and injunctive relief, alleging that "[t]here is a

substantial, unresolved question as to whether, under these circumstances, Plaintiff

Local 49 can file its own grievances or demand arbitration of any dispute concerning the

said Attrition List provisions" (*id.* ¶ 37 at 9), and that, because Local 49 "no longer has

any authority to participate in the administration of the [pension plan][,] [i]f and to the

extent that Plaintiff Local 49 disagrees with any decision made by the administrators of

the said Plan, who are appointed solely by Defendant Post, their only recourse is

litigation" (*id.* ¶ 39 at 9).  In his motion to dismiss, Stevens raises, *inter alia*, the issue of

ripeness.  Because that issue implicates the court's subject matter jurisdiction, I

consider it first, and because I find it dispositive, I do not consider Stevens's remaining

arguments or those raised by the Guild or the Post in their motions.

A motion to dismiss for lack of ripeness implicates considerations of justiciability.

Article III, section 2 of the Constitution limits the jurisdiction of the federal courts to

"Cases" and "Controversies."  ***Allen v. Wright***, 468 U.S. 737, 750, 104 S.Ct. 3315,

3324, 82 L.Ed.2d 556 (1984); **Carolina Casualty Insurance Co. v. Pinnacol Assurance**, 425 F.3d 921, 926 (10th Cir. 2005).  The various justiciability doctrines, including those of ripeness and standing,[4] ensure that federal courts address only concrete disputes between parties with present, adverse interests.  **Abbott Laboratories v. Gardner**, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).  "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  **National Park Hospitality Association v. Department of Interior**, 538 U.S. 803, 807, 123 S.Ct. 2026, 2030, 155 L.Ed.2d 1017 (2003) (citation and internal quotation marks omitted).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  **Texas v. United States**, 523 U.S. 296, 300, 118 S.Ct. 1257, 1259, 140 L.Ed.2d 406 (1998) (citation and internal quotation marks omitted).

Although the Amended Complaint claims that defendants' alleged actions affect

---

[4]  Although standing and ripeness are analytically distinct concepts, they overlap substantially, and especially where the issue is whether the plaintiff has sustained an injury-in-fact, "the issues of standing and ripeness are particularly difficult to divorce."  **Morgan v. McCotter**, 365 F.3d 882, 887 (10th Cir. 2004).  Thus, and although not raised by the motions, the same infirmities that render plaintiffs' claims for injunctive relief unripe also make it impossible for plaintiffs to demonstrate standing at this juncture:

> For purposes of Article III, . . . the plaintiff [first] must suffer an injury in fact.  An injury in fact is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical.  A plaintiff must also demonstrate that the harm complained of is fairly traceable to defendant's conduct and that a favorable ruling from the court would redress plaintiff's injury.  Thus, a main focus of the standing inquiry is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury.

**Id**. at 887-88 (citations and internal quotation marks omitted).  When a plaintiff relies on the threat rather than the fact of injury, a mere possibility of future injury is insufficient to confer standing.  **Nova Health Systems v. Gandy**, 416 F.3d 1149, 1155 (10th Cir. 2005).  Rather, the case is justiciable only when the threat is "certainly impending" or "real and immediate."  **Id**. (citations and internal quotation marks omitted). As should be clear from the discussion herein, plaintiffs' alleged injuries are neither.

Local 49's ability to enforce members' rights in the attrition lists and the pension plan, it fails to allege anything to suggest that any such injury is either actual or imminent. Nothing in the Amended Complaint suggests that Local 49 has attempted to file a grievance or has demanded arbitration in any matter actually implicating the attrition lists, or that it has been rebuffed in any such effort.  Nor is it alleged that the Post has made any decisions, or threatened to do so, that actually or imminently affect members' rights in the pension plan.  The court cannot enjoin a party from doing that which it has neither done nor attempted to do.  Although plaintiffs allege that their only recourse should these eventualities actually occur would be to file a lawsuit, the necessity of such an entirely hypothetical litigation is not, in itself, an injury.  The ripeness doctrine precludes federal courts from issuing purely advisory opinions regarding what the law might provide if various contingencies eventually come to pass, and plaintiffs' claims here would transgress that boundary.  Therefore, I find and conclude that plaintiffs' claims for injunctive relief with respect to the MOAs are not ripe for adjudication.

With respect to plaintiffs' claims for declaratory relief with respect to the validity *vel non* of the CBA and the two MOAs, I further perceive a problem of redressability. Redressability is a requirement of constitutional standing that implicates causation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).  It requires a showing that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.*, 112 S.Ct. at 2136 (quoting *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976)).  *See also Cache Valley Electric Co. v. State of Utah Department of Transportation*, 149 F.3d 1119, 1123 (10th Cir. 1998) (redressability requires showing that "the relief sought . . . will provide redress for

the injury claimed"), ***cert. denied***, 119 S.Ct. 1333 (1999).

"[W]hat makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff." ***Cox v. Phelps Dodge Corp.***, 43 F.3d 1345, 1348 (10th Cir. 1994) () (citation and internal quotation marks omitted), ***superseded by statute on other grounds as noted in Walker v. United Parcel Service, Inc.***, 240 F.3d 1268, 1278 (10th Cir. 2001).  If the CBA, MOA 6, and MOA 12 all are declared valid, then matters would stand as they are currently, and the issuance of a declaratory judgment to that effect would not affect the relationship between the parties.  Although plaintiffs might be imagined to derive peace of mind from knowing precisely what Local 49's rights in the CBA are, such intangible psychological benefits are not sufficient to state a cognizable injury.  ***See Steel Co. v. Citizens for a Better Environment***, 523 U.S. 83, 106-07, 118 S.Ct. 1003, 1018-19, 140 L.Ed.2d 210 (1998).

On the other hand, if both MOAs and the CBA are declared invalid, which appears to be the outcome plaintiffs seek,[5] it is not at all clear what the practical outcome would be.  Certainly, nothing in the Amended Complaint supports the conclusion that former members who now are represented by the Guild would automatically revert to being members of Local 49 once again if the court were to declare the various agreements invalid.[6]  Moreover, even if membership were restored

---

[5]  Plaintiffs allege that proper procedures were not followed in attempting to ratify the CBA and that, had they been, the CBA would not have been ratified.  (***See* Am. Compl.** ¶ 18 at 4-5.)

[6]  Moreover, the allegations contained in the Amended Complaint regarding the membership of Local 49 are internally inconsistent.  Although plaintiffs on the one hand aver that "Local 49 no longer has any members who are employed by Defendant Post or by any other employer" (**Am. Compl.** ¶ 40 at 9), they also allege that the individual plaintiffs are members of Local 49 (***id.*** ¶¶ 3-5 at 2), and elsewhere

under those circumstances, it is not apparent whether such a newly reinvigorated Local 49 could enforce the rights plaintiffs here allege are jeopardized. Indeed, it seems that there is no extant contract to govern the relationship between Local 49 and the Post if the agreements challenged here are invalidated. There is nothing in the Amended Complaint from which it might be concluded that any CBA in force prior to the allegedly offending one would be reinstated or has any continuing force and effect. Nor is there any allegation that a new CBA could be negotiated that would return authority over the attrition lists and a say in the administration of the pension plan to Local 49, and such a contingency presents its own obvious ripeness and standing issues in any event.

Given all these considerations, I find and conclude that this matter is not ripe for adjudication and that plaintiffs lack standing to pursue the claims asserted in the Amended Complaint.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant Lester E. Stevens, Jr.'s Motion To Dismiss Amended Complaint** [#39] filed November 3, 2010, is **GRANTED**;

2. That **Defendant Denver Newspaper Guild – Communications Workers of America, Local No. 37074 Motion To Drop as a Party and/or Be Dismissed** [#38] filed November 3, 2010, is **DENIED AS MOOT**;

3. That **Defendant Denver Newspaper Agency's Motion Under Fed.R.Civ.P. 21 To Drop Denver Newspaper Agency as a Misjoined Party, Alternatively To Dismiss Under Fed.R.Civ.P. 12(b)** [#37] filed October 29, 2010, is **DENIED AS MOOT**;

---

complain that "members of Plaintiff Local 49 are not members of Defendant Guild" (*id.* ¶ 37 at 9).

4.  That plaintiffs' claims against defendants are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction; and

5.  That judgment **SHALL ENTER** on behalf of defendants, Lester E. Stevens, Jr.; the Denver Newspaper Guild-CWA, Local No. 37074 of the Communications Workers of America, AFL-CIO-CLC; and the Denver Newspaper Agency, LLP, a Delaware limited liability partnership, now known as The Denver Post, LLC, and against plaintiffs, Ed Harshbarger, Jr.; Ronald Herber; Virgil Jones; and the Denver Typographical Union No. 49, Communications Workers of America Local 14705, as to all claims and causes of action asserted herein; provided, however, that the judgment **SHALL BE** without prejudice.

Dated February 17, 2011, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge